[Cite as *In re G.P.*, 2013-Ohio-4692.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: G.P., K.P. AND L.P. | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No.    2013CA00126 |
|  | : |                 2013CA00127 |
|  | : |  |
|  | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2012-JCV-00086 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 21, 2013 |
| APPEARANCES: | |

For Plaintiff-Appellee

JAMES B. PHILLIPS
SCJFS
221 Third Street S.E.
Canton, OH 44702

For Defendant-Appellant P.R.

AARON KOVALCHIK
116 Cleveland Avenue N.W., Ste. 808
Canton, OH  44702

For Defendant-Appellant E.P.

STACY M. ZIPAY
Stark County Public Defender
201 Cleveland Avenue S.W., Ste. 104
Canton, OH 44702

*Gwin, P.J.*

**{¶1}** Appellants P.R. ("Mother") and E.P. ("Father") appeal from the May 29, 2013 judgment entry of the Stark County Common Pleas Court, Family Court Division, terminating their parental rights and granting permanent custody of G.P., K.P., and L.P. to Stark County Department of Job and Family Services ("SCDJFS").

*Facts & Procedural History*

**{¶2}** P.R. is the mother of G.P., born October 14, 2009, K.P., born October 15, 2010, and L.P., born November 1, 2011. E.P. is the father of G.P., K.P., and L.P., as confirmed by genetic testing in February of 2013. On January 20, 2012, SCDJFS filed a complaint of neglect and dependency with regard to G.P., K.P., and L.P., and Mother's four older children. E.P. is not the father of Mother's four older children. The complaint alleged, in part, that Mother failed to supervise the children at a domestic violence shelter where they resided, and Mother and Father failed to provide for the basic needs of the children. Further, that there were allegations of domestic violence between Mother and Father. Father was charged with domestic violence against Mother, but the charge was no-billed when Mother refused to testify against Father.

**{¶3}** G.P., K.P., and L.P. were placed in the temporary custody of SCDJFS on January 25, 2012. SCDJFS filed an amended complaint on February 6, 2012 to add Father to the case plan. On February 14, 2012, G.P., K.P., and L.P. were adjudicated dependent children after Mother and Father stipulated to a finding of dependency. Also on February 14, 2012, SCDJFS orally moved to remove the allegation of neglect against Mother and Father.

{¶4} The trial court adopted and approved the case plan provided by SCDJFS on February 14, 2012. In the case plan Mother was ordered to: (1) secure and maintain independent housing with adequate supplies for all of the children; (2) complete a parenting evaluation and comply with all recommendations made; and (3) submit random urine screens, complete a substance abuse assessment, and complete any subsequent treatment as recommended. After Mother completed the parenting evaluation, the following services were added to her case plan: (1) complete Goodwill parenting; (2) complete an anger management program; (3) complete domestic violence counseling; and (4) complete a mental health and psychiatric assessment and comply with all treatment recommendations.

{¶5} In the case plan Father was ordered to: (1) secure and maintain independent housing with adequate supplies for all of the children; (2) complete a parenting evaluation and comply with all recommendations made; and (3) submit random urine screens, complete a substance abuse assessment, and complete any subsequent treatment as recommended. After Father completed the parenting evaluation, his case plan was amended to include the following: (1) complete Goodwill parenting and (2) complete a mental health assessment and comply with all treatment recommendations. After Father addressed his mental health issues, SCDJFS intended to refer him to Melymbrosia due to ongoing concerns of domestic violence between Mother and Father.

{¶6} At a case review hearing on July 2, 2012, the trial court indicated Mother needed more time to complete case plan services, Father's whereabouts were unknown but he tested positive for cocaine when he was last tested, and both parents needed to

follow through with recommendations made after their parenting evaluations.  SCDJFS filed a motion for permanent custody of G.P., K.P., and L.P. on December 20, 2012.  Mother's four older children were not included in the motion for permanent custody.  Three of Mother's other children currently reside with a paternal grandmother in Wisconsin and the fourth child, Z.T., is placed in a foster home in Stark County.  SCDJFS alleged Mother and Father failed to complete the case plan objectives and failed to visit since May (Father) and August (Mother) of 2012.  On February 5, 2013, Mother filed a motion to change legal custody to Charlotte Luce ("Luce"), maternal grandmother.  The trial court set a trial on the motion for permanent custody for March 4, 2013.  On February 27, 2013, the trial court continued the trial on the motion for permanent custody to allow SCDJFS to explore the out-of-state placement with Luce.  The trial was continued to May 7, 2013.  Prior to the trial, on May 1, 2013, Father filed a motion to extend temporary custody to SCDJFS.  On May 7, 2013, the trial court conducted a trial on SCDJFS' motion for permanent custody, Mother's motion for legal change of custody to Luce, and Father's motion to extend temporary custody of SCDJFS.

{¶7}    At the trial, Stacy Senff ("Senff"), the ongoing case worker from SCDJFS, testified she had been involved with the family on a non-court basis since December of 2011 because of homelessness and domestic violence issues.  Senff and SCJDFS became involved with the family on a court-basis on January 20, 2012, due to concerns about domestic violence, failure to supervise, and failure to provide for basic needs of the children.

{¶8}   With regards to Mother, Senff testified she did not start or complete Goodwill Parenting and while she started an anger management program, she did not complete the program.  Mother did complete a parenting evaluation.  Mother told Senff she was going to Phoenix Rising for mental health services, but Senff could not verify Mother's attendance.  Senff admitted she did not ask Mother to sign a release for the records from Phoenix Rising.  Mother completed Quest for substance abuse, but subsequently tested positive for cocaine in August of 2012.  After Mother tested positive for cocaine, Senff intended to inform Mother she was required to go back to Quest, but Senff was unable to reach Mother to notify her of this requirement.  Senff testified she would have added other case plans services to Mother's case plan, but that Senff did not do so because Mother failed to complete the original services required in the case plan.  On cross-examination, Senff stated if Mother completed equivalent services in another state, these services might meet the case plan requirements in Stark County, if Senff was able to verify the services were equivalent to those required in the current case plan.  However, Senff testified that Mother never called to inform her she was obtaining services in another state.  Senff was not able to verify other services because she could not communicate with Mother and Mother failed to contact her.  Mother's January 15, 2013 drug screen was negative.

{¶9}   Mother visited G.P., K.P., and L.P. regularly when the case began through the spring of 2012.  However, after the spring of 2012, the visits declined and Mother's last visit with G.P., K.P., and L.P. was August 14, 2012.  Senff's last communication with Mother was in August of 2012.  While Mother appeared for court hearings, Mother has not provided Senff with a permanent phone number or address, though Senff has

information from Wisconsin that Mother has been receiving benefits in Wisconsin since April of 2013. Senff stated she has concerns with Mother's mental health and her lack of support system, which could have been improved through the completion of her case plan services that Mother failed to complete. Senff testified Mother has failed to reduce the risk she posed at the time G.P., K.P., and L.P. were removed and Mother cannot safely care for the children at this time.

{¶10} Senff stated Father completed a parenting evaluation and went to Quest for substance abuse issues, but subsequent to the Quest program, he continued to test positive for cocaine. Father contacted Senff in December of 2012 and Senff again referred him to Quest for substance abuse counseling. Though Father did have a few negative drug screens throughout the pendency of the case, Father was unsuccessfully discharged from Quest in February of 2013 due to his positive cocaine tests and Father has not completed any drug treatment since that date. Father started the Goodwill Parenting program, but was discharged from the program due to positive cocaine tests. Senff referred Father to Coleman Behavioral Health ("Coleman") for mental health issues. Father told Senff he went to Coleman, but Senff was unable to verify his attendance because Father failed to sign a release for her to view the records from Coleman. Senff intended to refer Father to Melymbrosia after his mental health issues were addressed because he was incarcerated for domestic violence at the beginning of the case. However, Senff could not make the referral to Melymbrosia because Father had not completed mental health treatment. Further, if Father successfully completed Goodwill parenting, Senff would have referred him to the Intensive Parent Child/Interaction Program. Senff testified Father last visited G.P., K.P., and L.P. in May

of 2012.  Senff stated Father has not completed his case plan, has not reduced the risk posed to the children that existed since the beginning of the case, and cannot safely care for the children.

{¶11} Senff testified that Father and Mother are currently in Wisconsin, living from hotel to hotel, and that neither of the parents is currently employed.  Senff stated Father and Mother could not maintain stable housing when they lived in Stark County and, when the case was initiated by SCDJFS, G.P., K.P., and L.P. were living in a domestic violence shelter with Mother.  Senff does not have a working phone number for either parent.  Senff does not believe SCDJFS should obtain an extension of temporary custody because the parents have failed to visit since May and August of 2012, the visits the parents had with the children did not go well, the parents are not residing in Ohio, they were not able to comply with services in Stark County, and their past behavior is an indicator of future behavior and thus the pattern of domestic violence and homelessness will likely continue.

{¶12} When Senff testified in the best interest portion of the hearing, she stated G.P., K.P., and L.P. have no medical concerns and have been in the same foster home since February of 2013.  One of Mother's older children, Z.T., is placed in a separate foster home in Stark County.  Mother's three oldest children are placed with their paternal grandmother in Wisconsin.  G.P., K.P., and L.P. are bonded to their foster parents and are comfortable in their home.  Senff stated the children do not have a bond with Mother or Father because of their lack of visitation and the young age of the children.  Senff testified Luce contacted her in August of 2012 about obtaining custody of G.P., K.P., and L.P.  Senff initially expressed her concerns to Luce because Luce

was living with a boyfriend who had domestic violence issues and criminal convictions. After Luce moved to Wisconsin, she requested a home study. Senff stated the home study had not been approved and she is unsure whether it will be approved. Senff has concerns that Mother is living with Luce as Senff verified the address Mother gave her was Luce's address in Wisconsin. Luce never requested visitation with G.P., K.P, and L.P. throughout the pendency of the case. Senff left a message for Luce requesting an in-person interview when Senff found out Luce was coming to Ohio, but Luce never returned her call. Senff testified G.P., K.P., and L.P. have no bond with Luce and L.P. has never met Luce. Senff testified it was in the best interest of G.P., K.P., and L.P. for permanent custody to be granted to SCDJFS.

{¶13} Mother testified that when she left Ohio, she initially went to Minnesota and there she completed parenting classes through the Young Dad's Program and completed an eight-week anger management program. Mother testified about certificates of completion for both programs, but the certificates were not offered into evidence. Mother also stated she gave Senff proof she attended Phoenix Rising programs when she was in Stark County. Mother currently lives in Wisconsin and has no permanent housing, but resides in an extended-stay hotel where she pays in advance. The hotel does not have a bedroom for G.P., K.P., and L.P. Mother last met with Senff in August 2012 and did not call Senff when she returned to Ohio. Mother testified she did not tell Senff she completed services in Minnesota or provide Senff with information to verify her completion of these services in Minnesota. Mother verified she has not visited G.P., K.P. and L.P. since August of 2012. Mother stated she did talk to the children on the phone by calling the foster parents, but more than three months had

elapsed since she had spoken to the children. Mother testified she was told not to call the children again.

{¶14} Luce testified she contacted SCDJFS in August of 2012 and Senff told her there would likely be issues with Luce obtaining custody of the children because Luce's live-in boyfriend had a criminal record. Luce moved to Wisconsin and is currently living near the paternal grandmother who has temporary custody of three of Mother's older children. However, Luce has only had a few visits with the older children because the therapist of one of the children felt there should be no further visits with Luce. Luce does not currently have independent housing where G.P., K.P., and L.P. could sleep, but Luce testified she could obtain independent housing where the children could reside. Luce stated she did not request to visit G.P., K.P., and L.P. because Senff would not return her calls. Luce testified Mother does not live with her and Luce would not permit Mother to live with her. Luce believes SCDJFS has hindered her ability to bond with G.P., K.P., and L.P. However, she did not request a visit with them when she decided she was attending the trial. Luce is employed at a factory and stated she has had custody of Mother's other children in the past and thus previously completed a home study and background check. Luce admitted to smoking marijuana with Mother years ago when Mother was a teenager. Luce does not approve of some of Mother and Father's actions, but does not feel Mother and Father pose a risk to G.P., K.P., and L.P.

{¶15} Bernard Hunt ("Hunt"), the Guardian Ad Litem ("GAL") for G.P., K.P., and L.P., submitted his report stating he feels it is in the best interest of the children for permanent custody to be granted to SCDJFS. Hunt indicated in his report he was unable to contact Father because the phone number provided was not in service and,

while he received one message from Mother, he could not reach her after he attempted to return her call several times. Hunt stated in his report that G.P., K.P., and L.P. are doing well in their placement and the foster parents are providing the stability they need. Hunt also testified at trial. Hunt was appointed as GAL to the children several weeks prior to the hearing due to the previous GAL taking a position with the court, but testified he reviewed the entire file provided to him by the previous GAL. Hunt had a face-to-face meeting with Luce on the day prior to the hearing. However, he still believes permanent custody should be granted to SCDJFS. Hunt also testified he believes Mother and Luce are in close contact.

{¶16} Pursuant to a judgment entry filed on May 29, 2013, the trial court terminated Mother's and Father's parental rights and granted permanent custody of G.P., K.P., and L.P. to SCDJFS. The trial court found G.P., K.P., and L.P. could not be placed with either parent at this time or within a reasonable amount of time and that G.P., K.P., and L.P. were abandoned based upon the lack of contact for more than ninety (90) days by Mother and Father. The trial court further found it is in the best interest of G.P., K.P., and L.P. that permanent custody be granted to SCDJFS.

{¶17} Mother appealed from the trial court's May 29, 2013 judgment entry and raises the following assignments of error on appeal:

{¶18} "I. THE JUDGMENT OF THE TRIAL COURT THAT APPELLANT ABANDONED THE MINOR CHILDREN WAS AGAINST THE MANIFEST WEIGHT AND THE SUFFICIENCY OF THE EVIDENCE.

{¶19} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A

REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶20} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶21} Mother's case has been assigned Case No. 2013 CA 00126.

{¶22} Father also appealed from the trial court's May 29, 2013 judgment entry and raises the following assignments of error:

{¶23} "I. THE TRIAL COURT'S DECISION THAT [G.P., K.P., AND L.P.] CANNOT AND SHOULD NOT BE PLACED WITH MOTHER OR FATHER WITHIN A REASONABLE PERIOD OF TIME WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶24} "II. THE TRIAL COURT'S DECISION THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILDREN TO TERMINATE PARENTAL RIGHTS AND PLACE THE [MINOR] CHILDREN IN THE PERMANENT CUSTODY OF THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."

{¶25} Father's case has been assigned Case No. 2013 CA 00127.

{¶26} For purposes of judicial economy, we will address the two cases together.

*Permanent Custody*

{¶27} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405

U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶28} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶29} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶30} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

**{¶31}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶32}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody.  In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

*Mother's First Assignment of Error*

**{¶33}** Mother argues the trial court's finding that she abandoned G.P., K.P., and L.P. pursuant to R.C. 2151.414(B)(1) is against the manifest weight of the evidence. We disagree.

**{¶34}** For purposes of R.C. 2151.414(B)(1)(b), "abandoned" is defined by R.C. 2151.011(C), which provides that "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than

ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

{¶35} Mother contends her statement that she was allowed to have phone calls with the children "until I told them that everything would be okay, then I was told not to call them anymore because I was lying to them" demonstrates that SCDJFS prevented her from contacting the children. However, Mother failed to present any evidence as to when SCDJFS prevented her from calling the children and failed to provide any evidence as to who told her not to call the children. Further, Mother testified she stopped calling more than ninety days prior to the permanent custody trial, stated she never contacted Senff to let her know when she traveled to Stark County, and admitted the last time she visited G.P., K.P., and L.P. was in August of 2012. Luce testified she called Senff to inquire about obtaining custody of G.P., K.P., and L.P. only after she discovered Mother had stopped visiting them, in approximately July or August of 2012. Senff testified Mother last visited G.P., K.P., and L.P. on August 14, 2012 and failed to contact her to set up a visit after that date. As the statute defines "abandonment" as failure to make contact for more than ninety days, the trial court's finding that Mother abandoned G.P., K.P., and L.P. is not against the manifest weight of the evidence. Mother's first assignment of error is overruled.

*Mother's Second Assignment of Error and Father's First Assignment of Error*

{¶36} Both Mother and Father contend the trial court erred in finding that G.P., K.P., and L.P. cannot be placed with them at this time or within a reasonable period of time. We disagree.

{¶37} Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. The relevant portions of R.C. 2151.414(E) are as follows:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties. * * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * *

(10) The parent has abandoned the child.

{¶38} A review of the record supports the trial court's conclusion that G.P., K.P., and L.P. cannot be placed with Mother or Father within a reasonable time. Senff

testified Mother and Father have not done anything to reduce the risk they posed at the time the children were removed and cannot safely care for the children. Senff remains concerned about issues relating to homelessness, domestic violence, mental health issues, lack of visitation by both parents, and positive drug tests of Father. While both Mother and Father complied with some of the case plan requirements such as completing the parenting evaluation, both Mother and Father failed to make any significant progress on their case plans. Father was discharged from Goodwill parenting due to his positive drug screens and was unsuccessfully discharged from Quest when he continued to test positive for cocaine. Father failed to sign a release of information for Senff to contact Coleman to verify his attendance for mental health issues. Senff was not able to make further recommendations in Father's case plan such as referrals to Melymbrosia and Intensive Child/Parent Interaction because of Father's failure to complete the preliminary requirements in the case plan.

**{¶39}** Mother stated she completed a parenting class and anger management class in Minnesota and testified to her certificates of completion. However, these certificates of completion were not admitted into evidence. While Senff testified some of these programs might qualify if equivalent to those in Mother's case plan, Senff also stated she would have to verify the content of the programs and Mother's attendance at the programs. Mother failed to communicate with Senff to notify her she was receiving services in Minnesota or provide Senff with information to verify the content of the programs and Mother's attendance. Senff continually had problems communicating with both Mother and Father as neither of them called her and she did not have a valid address or phone number for Mother or Father.

{¶40} Senff also testified and Mother confirmed that Mother and Father are currently living in a hotel in Wisconsin that has no bedrooms for the children. Neither Mother nor Father is employed. Father continually tested positive for cocaine throughout the pendency of the case. Mother failed to visit G.P., K.P., and L.P. since August of 2012 and her last phone contact with the children was more than ninety days before the permanent custody trial. Father failed to visit G.P., K.P., and L.P. since May of 2012. Neither parent contacted Senff after these dates to set up further visitation and thus both Mother and Father abandoned the children.

{¶41} Despite Mother and Father's compliance with parts of the evaluation portion of the case plan, each failed to follow through on the balance of the assessments and recommendations, continually failed to communicate with Senff to verify any program participation or to receive assistance with services, failed to visit the minor children, and failed to provide a stable home for G.P., K.P., and L.P. Accordingly, we find there is competent, credible evidence to support the trial court's finding that the minor children cannot be placed with either parent within a reasonable amount of time because the failure to substantially complete the case plan objectives and the failure of the parents to reduce the risks posed when the children were removed are directly attributable to the actions and inaction of Mother and Father. Mother's second and Father's first assignment of errors are overruled.

*Mother's Third Assignment of Error and Father's Second Assignment of Error*

{¶42} Both Mother and Father allege the trial court erred in finding it is in the best interest of G.P., K.P., and L.P. for permanent custody to be granted to SCDJFS. Mother and Father argue it is in the best interest of the children to be placed with Luce

in Wisconsin. Father further contends the trial court erred in denying his motion for extension of temporary custody to SCDJFS.

*Best Interest*

**{¶43}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child and (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re: Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist. 1994).

**{¶44}** We find the trial court did not err in finding that granting permanent custody to SCDJFS is in the best interest of G.P., K.P., and L.P. As detailed above, Mother and Father failed to make significant progress on their case plans and failed to visit G.P., K.P., and L.P. While G.P., K.P., and L.P. will lose the minimal bond they have with Mother and Father and it will be more difficult for them to see their siblings in Wisconsin, this harm is outweighed by the benefits of permanency and stability. G.P.,

K.P., and L.P. will remain together in a foster home and are in close proximity to the foster home of Z.T., one of Mother's older children.

**{¶45}** Luce testified she sought custody of the children beginning in August of 2012. While Luce contacted Senff in August of 2012, Luce lived with her boyfriend who had a criminal record. When Luce moved to Wisconsin, she requested a home study which was initiated. However, on the date of the trial, Senff had not received notification that Luce had passed the home study and Senff received indications that the individuals in Wisconsin were having difficulty obtaining access to Luce and her home. Luce testified that while she can obtain independent housing and is employed, she currently does not have independent housing and her current living situation does not include bedrooms for G.P., K.P., and L.P.

**{¶46}** Senff testified Luce never requested visitation with G.P., K.P., and L.P. during the pendency of the case and that the children do not know Luce or have a bond with her. Luce confirmed she never requested visitation, but stated it was because Senff would never call her back if she called her to ask her something. When Senff left Luce a message requesting an in-person interview when Luce came to town prior to the trial date, Luce did not return her call. Luce stated her visits with Mother's older children in Wisconsin did not go well and one of the children's therapists recommended a suspension of visitation with Luce. Both Senff and Hunt testified they were concerned by the close contact between Mother and Luce. Though Luce testified she was not living with Mother and would not let Mother live with her, Luce also testified she did not think Mother or Father posed a risk to the children. Luce admitted to smoking marijuana with Mother many years ago when Mother was a teenager.

**{¶47}** Both Senff and Hunt testified that granting permanent custody to SCDJFS is in the best interest of G.P., K.P., and L.P. Senff testified the children have been in the same foster home together since February of 2013, are bonded to their foster parents, and deserve permanency. In his report, Hunt determined the children were doing well in their placement and the foster parents were providing them with stability and comfort. Hunt spoke with Luce prior to the trial, but, as a result of his conversation with her, did not seek to change the opinion contained in his report that the best interest of G.P., K.P., and L.P. would be served by granting permanent custody to SCDJFS.

**{¶48}** Based on the foregoing, we find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to SCDJFS is in the best interest of G.P., K.P., and L.P. is supported by competent and credible evidence.

*Father's Motion for Six-Month Extension*

**{¶49}** Father argues the trial court erred when it denied his motion for a six-month extension of temporary custody to SCDJFS. Father contends both he and Mother have complied with portions of the case plan and are working towards reunification. We disagree. A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See R.C. 2151.415(D)(1) and (2). Pursuant to R.C. 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent

or otherwise permanently placed within the period of extension.  See *In re McNab*, 5th Dist. Nos. 2007 AP 11 0074, 2007 AP 11 0075, 2008-Ohio-1638.

**{¶50}** We find Father has failed to demonstrate an abuse of discretion by the trial court in denying his motion for six-month extension.  The testimony reflects that because of Mother's and Father's decisions in failing to visit G.P., K.P., and L.P. since May and August of 2012, failing to secure independent housing, failing to complete the recommendations made after their parenting evaluations, Father's continued positive drug tests throughout the case, and both parents' consistent failure to communicate with the caseworker, Mother and Father have failed to make significant progress in their case plan.  Further, based on the evidence presented, there is not clear and convincing evidence that a reasonable likelihood of reunification exists in six months.  Mother and Father are unemployed, are living in an extended-stay hotel, and have not addressed the concerns present since the beginning of the case such as domestic violence, mental health concerns, and substance abuse.  As indicated by the trial court, Mother and Father are not able to remedy the initial problems that existed at the beginning of the case in the foreseeable future.   As set forth more fully above, the evidence before the trial court supports the conclusion that an extension of temporary custody is not in G.P., K.P., and L.P.'s best interests, but, rather, their interests are best served by an award of permanent custody to SCDJFS.  Father's third assignment of error is overruled.

{¶51} Based on the foregoing, we find the trial court did not abuse its discretion in granting permanent custody of G.P., K.P., and L.P. to SCDJFS.  Mother's and Father's assignments of error are overruled and the May 29, 2013 judgment entry of the Stark County Common Pleas Court, Family Division, is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY


_____
HON. CRAIG R. BALDWIN


WSG:clw 1001

[Cite as *In re G.P.*, 2013-Ohio-4692.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

IN RE: G.P., K.P. AND L.P.    :
              :
              :
              :
              :
              :   JUDGMENT ENTRY
              :
              :
              :
              :   CASE NO.   2013CA00126

For the reasons stated in our accompanying Memorandum-Opinion, the May 29, 2013 judgment entry of the Stark County Common Pleas Court, Family Court Division, is affirmed. Costs to appellants.

            _____

            HON. W. SCOTT GWIN

            _____

            HON. PATRICIA A. DELANEY

            _____

            HON. CRAIG R. BALDWIN

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: G.P., K.P. AND L.P.       :
                                     :
                                     :
                                     :
                                     :
                                   :             JUDGMENT ENTRY
                                   :
                                   :
                                   :
                                   :             CASE NO. 2013CA00127

For the reasons stated in our accompanying Memorandum-Opinion, the May 29, 2013 judgment entry of the Stark County Common Pleas Court, Family Court Division, is affirmed.  Costs to appellants.

                                 _____
                                   HON. W. SCOTT GWIN

                                 _____
                                   HON. PATRICIA A. DELANEY

                                 _____
                                   HON. CRAIG R. BALDWIN