[Cite as *In re X.L.*, 2014-Ohio-1219.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| TWIGGS/LUCE/WILLIAMS | : | |
| PATTERSON CHILDREN | : | Hon. Sheila G. Farmer, P.J. |
| X.L. | : | Hon. John W. Wise, J. |
| C.W. | : | Hon. Patricia A. Delaney, J. |
| L.W. | : | |
| Z.T. | : | Case No. 2013CA00220 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING: Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2012 JCJ 00086


JUDGMENT: AFFIRMED


DATE OF JUDGMENT ENTRY: March 24, 2014


APPEARANCES:

For Appellee Stark County DJFS: For Appellant Mother:

JAMES B. PHILLIPS AARON KOVALCHIK
STARK COUNTY JFS 116 Cleveland Ave. NW
221 Third St. SE Suite 808
Canton, OH 44702 Canton, OH 44702

*Delaney, J.*

{¶1} Appellant P.P. ("Mother") appeals from the October 11, 2013 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division. Appellee is Stark County Department of Job and Family Services ("Agency").

## FACTS AND PROCEDURAL HISTORY

{¶2} This case involves four children of Mother: Z.T. (d.o.b. 11/10/2000), X.L. (d.o.b. 1/27/04), C.W. (d.o.b. 11/2/0/05) and L.W. (d.o.b. 10/17/06). The father of Z.T. is unknown; Christopher Williams ("Father") is the established father of the three youngest children only.

### *Case History*

{¶3} This case arose when the Agency filed a complaint seeking temporary custody of the four children named above, plus three additional children of Mother: G.P., K.P., and L.P. Permanent custody of the latter three children was awarded to the Agency on May 29, 2013 after a contested trial, a decision we affirmed in *In re G.P.,* 5th Dist. Stark Nos. 2013CA00126, 2013CA00127, 2013-Ohio-4692.

{¶4} Relevant to the instant appeal, on February 14, 2012, the trial court found Z.T. (d.o.b. 11/10/2000), X.L. (d.o.b. 1/27/04), C.W. (d.o.b. 11/2/0/05) and L.W. (d.o.b. 10/17/06) to be to be dependent and the children were placed in the Agency's temporary custody. A case plan was approved and adopted. Regular six-month and annual reviews were held and the trial court found the Agency made reasonable efforts to reunify the family.

{¶5} On June 14, 2013, the Agency filed a motion for permanent custody of Z.T. (d.o.b. 11/10/2000).

{¶6} On June 17, 2013, the Agency filed a motion to extend temporary custody of X.L. (d.o.b. 1/27/04), C.W. (d.o.b. 11/20/05), and L.W. (d.o.b. 10/17/06) which was later amended to a motion to change legal custody to T.G., paternal grandmother in Wisconsin, upon a six-month interstate home study.

{¶7} The motions for permanent custody and change of legal custody were heard on October 10, 2013. Neither Mother nor Father appeared for the hearing.

{¶8} On October 11, 2013 the trial court journalized its findings of fact and conclusions of law terminating Mother's parental rights and granting permanent legal custody of Z.T. (d.o.b. 11/10/2000) to the Agency and changing legal custody of X.L. (d.o.b. 1/27/04), C.W. (d.o.b. 11/20/05), and L.W. (d.o.b. 10/17/06) to T.G.

*The Evidence before the Trial Court*

{¶9} The following facts are adduced from evidence at the motions hearing before the trial court on October 10, 2013.

{¶10} Stacy Senff testified as the ongoing Agency caseworker for all four children. The children were taken into emergency temporary custody on January 20, 2012 and were found to be dependent children on February 6, 2012. They have remained in the temporary custody of the Agency since January 20, 2012 and the trial court has conducted regular review hearings, finding the Agency has made reasonable efforts to reunite the family and approving and adopting a case plan.

{¶11} The father of Z.T. (d.o.b. 11/10/2000) is unknown; no father has been identified. John Doe service has been perfected.

{¶12} Father of X.L. (d.o.b. 1/27/04), C.W. (d.o.b. 11/20/05), and L.W. (d.o.b. 10/17/06) is located in Milwaukee, WI and has contact with the children; he agrees with

the motion to change legal custody of the three children to his mother, T.G., who lives in Eau Claire, WI. Father has been released from jail and visits frequently. Senff testified Father is not involved in case plan services because he agreed with his mother having legal custody.

*Mother has not Completed Case Plan*

{¶13} Mother's case plan services included an intake assessment and substance abuse treatment at Quest, random urine screens, and a parenting assessment at "Northeast Ohio." Mother went to Quest for the assessment and denied a history of substance abuse, although she tested positive for cocaine. She was told to attend Quest for substance abuse counseling and she did so.

{¶14} Mother completed the parenting assessment at Northeast Ohio, receiving several recommendations which were incorporated into her case plan. She was required to complete anger management and domestic violence counseling at Free Space, but she only attended a few times. She was required to complete Goodwill Parenting, which she did not attend at all. Finally, she was required to receive a comprehensive mental health assessment and psychological evaluation; a concern existed with Mother's bipolar condition. She contacted Phoenix Rising and attended a few appointments, but didn't sign releases so Senff was unable to ascertain compliance with this requirement.

{¶15} The Agency was also concerned with Mother's ongoing cocaine abuse. Her last positive test was August 28, 2012; she did comply with random urine screens, when Senff could reach her.

{¶16} Senff's communication with Mother was intermittent. She sporadically showed up for visits and her telephone numbers changed "constantly." Senff's last contact with Mother was August 28, 2012, when she was scheduled for a visit with the children. Because Mother had not been showing up, the Agency had not transported the children for the visit. Senff and her supervisor met with Mother that day and discussed their concerns.

{¶17} On cross-examination, Senff explained Mother had visitation for one hour per week and the Agency had stopped visitation because Mother did not show at all for three or four weeks and didn't call to cancel, which was too traumatic for the children.

{¶18} Mother did not reappear until a court hearing in December or January of 2013 and did not maintain contact with Senff since the permanent custody hearing on the other three children mentioned supra, on May 7, 2013. At that hearing, Mother brought documentation of some substance abuse treatment she was receiving in Wisconsin, but Senff was only able to verify Mother had missed two appointments, done no follow-up, and had not provided a release.

{¶19} Mother's last visit with the children was August 14, 2012. She did not request a visit with the children at the permanent custody hearing on her other children held on May 7, 2013.

{¶20} Senff does not believe Mother has done anything to reduce the risk she poses to her children and cannot safely parent the children.

{¶21} Mother's last known whereabouts were in Wisconsin. She had a baby in Wisconsin in May, 2013 and as of the date of the hearing, has custody of the child. Senff testified a case has been opened but the child has not been removed, despite no

indication Mother has completed services in Wisconsin. Senff testified at one point the Wisconsin children's services agency was unable to locate Mother and the child.

*Z.T.'s Best Interests*

{¶22} Z.T. (d.o.b. 11/10/2000) is a biracial child with no medical issues; he does have some psychological and developmental issues, specifically, Reactive Attachment Disorder. He has been in counseling for this but is taking a break. He is in a foster home and doing "pretty well;" Senff testified grades are very important to him and he is trying football for the first time. Senff stated Z.T. has told her how important stability is to him; this is the first time he's been in the same school for two years. At the time of the hearing, Z.T. was 12 years old and in 7th grade. He is not presently in a foster-to-adopt environment because the Agency did not have permanent custody.

{¶23} Z.T. wants a permanent home. He is presently dealing with issues related to being abandoned in Ohio. He parented his younger siblings, and now they and his mother are in Wisconsin. His last visit with Mother was August 14, 2012. Senff testified the bond between Z.T. and Mother is present but is not healthy due to resentment related to splitting up the siblings.

{¶24} Senff opined permanent custody is in Z.T.'s best interest and will allow him to remain at the same school, finish the school year, have friendships, play sports, and live the life of a 12-year-old instead of parenting younger children. Z.T. is very adoptable and is a nice boy who craves a permanent home.

{¶25} The guardian ad litem agreed permanent custody is in Z.T's best interest.

*Best Interests of X.L., C.W., and L.W.*

{¶26} Evidence regarding the change of legal custody of X.L. (d.o.b. 1/27/04), C.W. (d.o.b. 11/20/05), and L.W. (d.o.b. 10/17/06) established the Agency requested an interstate home study on the home of T.G., paternal grandmother. The three children were placed there on October 24, 2012, and although they had a difficult transition, they are now doing well with the aid of services including intensive home-based counseling focusing on structure, rules, and consequences. The state of Wisconsin has approved the change of legal custody to T.G. as well.

{¶27} Mother has not visited the children at T.G.'s residence in Eau Claire, WI and the counselor does not recommend visits at this time. At one point during their time in WI, C.W. (d.o.b. 11/20/05) and L.W. (d.o.b. 10/17/06) set fires and when apprehended, they said they were burning the memories of the times Mother's husband hurt them and she didn't protect them.

{¶28} Senff opined the change of legal custody is in the best interest of the three younger children because they have been with T.G. for a year and have come a long way. Father is a big part of their lives and an uncle is also involved so they have positive male influences in their lives. The family has demonstrated commitment to maintaining stability and maintaining the placement until the three children reach the age of 18.

{¶29} The guardian ad litem also recommends granting the change of legal custody of X.L., C.W., and L.W.

{¶30} The trial court terminated Mother's parental rights and granted permanent legal custody of Z.T. (d.o.b. 11/10/2000) to the Agency and changed legal custody of X.L. (d.o.b. 1/27/04), C.W. (d.o.b. 11/20/05), and L.W. (d.o.b. 10/17/06) to T.G.

{¶31} Mother now appeals from the trial court's October 11, 2013 decision granting permanent custody of Z.T. to the Agency. Mother does not appeal the trial court's decision changing legal custody of the three younger children to T.G. Mother raises three assignments of error:

## ASSIGNMENTS OF ERROR

{¶32} "I. APPELLANT WAS DENIED HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."

{¶33} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶34} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

## ANALYSIS

I.

{¶35} In her first assignment of error, Mother argues she was deprived of the effective assistance of counsel. We disagree.

{¶36} We have recognized "ineffective assistance" claims in permanent custody appeals. See, e.g., *In re Utt Children*, 5th Dist. Stark No.2003CA00196, 2003–Ohio– 4576. Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, " * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody." *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist.2001), quoting *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist.1998). Our standard of review for an ineffective assistance claim is thus set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *In re Fell*, 5th Dist. Guernsey No. 05 CA 8, 2005–Ohio–5790, ¶ 11.

{¶37} To succeed on a claim of ineffectiveness, an appellant must satisfy a two-prong test. Initially, an appellant must show that trial counsel acted incompetently. See, *Strickland v. Washington*, supra, 466 U.S. at 668. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690.

{¶38} Even if an appellant shows that counsel was incompetent, the appellant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice"

prong, the appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 538 N.E.2d 373, quoting *Strickland* at 697. Accordingly, we will direct our attention to the second prong of the *Strickland* test. *In re Huffman*, 5th Dist. Stark No.2005–CA–00107, 2005–Ohio–4725, ¶ 22.

{¶39} First, Mother argues trial counsel was ineffective in failing to ask for a continuance of the permanent custody hearing. We disagree. We are inclined to agree with our colleagues on the Ninth District Court of Appeals, who concluded "the reasonableness of trial counsel's performance must be examined in light of the limitations that the [parent's] own behavior placed on counsel's ability to represent [him or her]." *In re J.S.*, 9th Dist. Summit No. 10CA009908, 2011-Ohio-985, ¶ 17, citing *In re N.H.,* 9th Dist. Summit No. 24355, 2008–Ohio–6617, at ¶ 28, citing *Strickland,* 466 U.S. at 691.

{¶40} As in *J.S.,* supra, in the instant case, the totality of the circumstances and the limitations Mother placed on trial counsel's performance do not support a conclusion that trial counsel's performance fell below an objective standard of reasonable representation in failing to move for a continuance of the permanent custody hearing. The record reflects Mother was served with notice of the permanent custody hearing. She did not complete her case plan or visit with Z.T. She did not stay in touch with Senff

or inform her of her whereabouts. There is no evidence in the record Mother asked her attorney to request a continuance or provided a reason for her absence on the day of the hearing. Mother has not demonstrated that trial counsel's performance fell below an objective standard of reasonable representation in failing to request a continuance on the day of the permanent custody hearing. See *Bradley*, supra, 42 Ohio St.3d 136 at paragraph two of the syllabus.

{¶41} Moreover, Mother has not demonstrated prejudice; she has not shown that the result would have been different had trial counsel requested a continuance. Mother had not visited Z.T. in over 90 days and he was in the temporary custody of the Agency for more than 12 of the last 22 months, either of which is sufficient grounds to support the motion for permanent custody.

{¶42} Mother further argues trial counsel was ineffective in failing to present a defense during the best-interest portion of the hearing because there was testimony Mother was "bonded" with Z.T. We disagree with this characterization of the evidence in the record; in fact, Senff testified the bond between Mother and Z.T. is not a positive one in light of Mother's abandonment and Z.T.'s realization thereof.

{¶43} We find Mother has not established trial counsel's actions constituted ineffective assistance and her first assignment of error is overruled.

## II., III.

{¶44} Mother argues in her second and third assignments of error the trial court erred in granting permanent custody of Z.T. to the Agency. We disagree.

{¶45} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405

U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶46} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶47} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶48} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court

determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶49} R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶50} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶51} Our review of the record shows the trial court's decision regarding permanency and placement was supported by clear and convincing evidence.

{¶52} Our review of the record fully supports the trial court's conclusion Mother abandoned her children, including Z.T., due to her lack of contact with them for more than 90 days and her failure to successfully complete her case plan services. Mother failed to maintain contact with Senff, failed to establish she completed required counseling or obtained counseling in Wisconsin, and did not complete required releases that would allow the Agency to determine whether she complied with any treatment recommendations. In the absence of any such evidence, we are left to conclude the Agency's most serious concerns, Mother's mental health and substance abuse, remain unresolved.

{¶53} We also note Mother had her parental rights involuntarily terminated with respect to three siblings of Z.T., a case which was on appeal at the time of the trial court's ruling. In the present case, we find clear and convincing evidence that, notwithstanding the prior termination, Mother has not established she can provide a legally secure placement and adequate care for the health, welfare, and safety of the child. R.C. 2151.414(E)(11).

{¶54} We next turn to the issue of best interests. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. Stark No.2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio

App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). The trial court determined it was in the best interest of the child to be placed in the permanent custody of the Agency pursuant to R.C. 2151.414(D), and we agree.

{¶55} Z.T. wants and deserves stability. The first stability he has experienced is in his foster home, where he has been able to stay in the same school for longer than a year and even participate in sports. He is experiencing life as a 12-year-old and not having to parent younger siblings. Although he is not presently in a foster-to-adopt environment, granting permanent custody to the Agency makes him eligible for such an arrangement and would allow him to find the permanence and stability he craves. He is a nice boy by all accounts and is adoptable.

{¶56} The guardian ad litem recommended that permanent custody be granted to the Agency.

{¶57} Mother has not visited with Z.T. since August 14, 2012 and has not requested a visit; she is apparently in Wisconsin. Z.T.'s realization and understanding of her abandonment has not created a healthy bond between them. The trial court found, and we agree, the benefits of permanency to Z.T. outweigh any detriment to severing the bond between Z.T. and Mother.

{¶58} Mother's second and third assignments of error are overruled.

## CONCLUSION

{¶59} Mother's three assignments of error are overruled and the judgment of the

Stark County Court of Common Pleas, Family Court Division is affirmed.

By: Delaney, J. and

Farmer, P.J.

Wise, J., concur.